Good morning, your honor. It's Chris Bennett from the State Appellate Defender's Office. Good morning, assistant state's attorney Brian Levitsky for the people. Do the only manner before us. Don't take all morning. But we're not going to use the clock. Just don't repeat. Make your arguments. How much time he uses, you get the same amount of time. If you want to take a little more, then you can have rebuttal. Let's keep it short. Thank you, your honor. Okay. Thank you. I don't even know where the button is. May I please the court. Good morning, your honor's counsel. My name is Chris Bennett from the State Appellate Defender's Office and I represent the appellant Antonio Jones before you today. With this court's permission, I intend to focus on the first three issues in the brief dealing with justified use of force. Antonio Jones did not receive a fair trial. Whether that was the trial court preventing Antonio from presenting justified use of force defenses or argument, trial counsel failing to tender justified use of force instructions, or the prosecutor repeatedly in closing argument misrepresenting justified use of force law, the trial resulting in Antonio's convictions was the antithesis of a fair trial. The record reflects why justified use of force defenses were so crucial to Antonio's receiving a fair trial. Six months before the shooting in this case, Antonio had been shot 12 times as he slept in his house. On the night of the incident events, Antonio, Leslie Kitchen, DeMario Thomas, Paris Banks sat in the TV room of Antonio's house. A rifle had been placed by the window that looked out onto the backyard of the house. Next to this TV room was the house's kitchen and back door. Just after midnight, Leslie heard individuals break through the locked property gate of the backyard. She went to the window, looked outside, could not tell who the individuals were, and started, quote, panicking like it's a gang because people in all black, end quote, were coming toward the gate.  They were asking, who is it? We didn't know. Ain't nobody know who it was. Her statement to the police was different though, right? That is correct. There is differing evidence in this trial. We have Paris Banks' trial testimony corroborating Leslie's grand jury testimony that no one inside the house knew who it was. Now Paris Banks' grand jury and written statements differ in this regard. But according to Leslie's grand jury testimony, DeMario held the rifle in the kitchen, not knowing who it was outside, and Antonio instructed DeMario to shoot the rifle at the back door. And he did it a single time. Now unfortunately on the other side of that door was a set of police officers attempting to execute a search warrant. In the dark of night, in dark raid garrison. Well, is there anything in the record about the reason why there were 16 officers for a search warrant? That's quite a few officers for a house that contained these individuals, including grandparents. There's nothing in the record that I can see why they would necessitate that team of officers and executing a search warrant at the stroke of midnight essentially, not wearing their police-issued hats, as they should have been, in non-reflective raid gear. The circumstances of this execution were it was a minimally lit area. There was no light above the back door. We do know from the police officers' testimony they claimed to have shouted, Chicago Police, search warrant, after they had already broken the property gate. At what point did they announce their purpose and authority for entering the residence? The Chicago Police claimed that they shouted this concurrently with attempting to pry and batter open the back door. It was after they had already broken the… Right, they had to go through a fence before they got to the back door. A live property fence, correct. Now the people inside, they didn't hear this. That's what Leslie Kitchen's grand jury testimony states. Paris Banks' trial testimony confirms this, that no one inside the house knew who these unknown individuals trying to break down the back door were. Now it appears that the front of the house was fortified. Is that the reason they didn't enter in the front? Or at least they announced their purpose and authority in the front? There was some evidence in the record that the front of the house may have been fortified to the police. So that may have been the reason why they entered through the back of the property. Now after the gunshot, the officers instructed the individuals to come out, which they did almost immediately upon being instructed, after the single shot was fired. With those facts in mind, justified use of force defenses, whether of self, others, or dwelling, were the crucial issues in this case. Vantiano didn't know the individuals outside were officers, that he was not guilty of attempt murder and aggravated battery, and vice versa. Despite the state's claims on appeal, justified use of force defenses are entirely appropriate in accountability-based cases. Well, let's talk about that, because I think you concede, and the state ultimately concedes, that there isn't any case like this in Illinois. There is no reported decision in Illinois where a defendant charged on a theory of accountability has been entitled to introduce evidence of his own subjective belief in the need for self-defense, as opposed to the principal actor's belief. There isn't any, right? Well, regarding charging, he was not charged under the accountability theory. He was tried under an accountability theory. And in Illinois, there is no difference for guilt and innocence purposes between an accountable party and a principal. It is as if Antonio's finger was on the trigger of this rifle when the state tried him under an accountability-based theory. And our criminal law allows this under justified use of force defenses. There is no prohibition in the statute, neither the accountability statute or in justified use of force statutes. So let me, this may be off your point a little bit, but let's posit that defense counsel was permitted to, you had in the record that we didn't know, based on the trial testimony, we didn't know who was at the back door. And so we thought somebody was breaking in. And so he advances his self-defense, defensive property. He gets those instructions, let's say. He's also got in the record the recantations at trial that defendant didn't tell Thomas to do anything. He didn't tell him to shoot. And therefore, I am not accountable for Thomas' conduct in shooting the gun. You seem to be saying, on appeal, he should have been able to advance those theories to a jury, right? Both of them. That he should, you can raise both a justified use of force and denial of. And isn't that a guaranteed ineffective assistance of counsel argument on appeal when defense counsel advances factually opposed arguments in the trial court? That is not. He couldn't not know who it was at the back door and act in self-defense and at the same time not have told Thomas to do anything, meaning I did tell him to shoot because I was afraid, and I didn't tell him to shoot, right? Isn't that an ineffective assistance argument on appeal? It might be an argument. It would not be a successful one. I can guarantee you it would be raised by your office. And I know that case law allows for, let's say, I don't know if this is mutually exclusive theories, but to raise both theories in the trial court, that could have been the strategy and it would have been reasonable, and there's case law on that. But turning to he was denied the opportunity to raise one of those defenses, and our law allows that. And if you take a look at the substantive criminal treatise on this issue and other jurisdictions, it's entirely allowable that you can raise justified use of force for an accountable party. The liability of each is measured by his or her own degree of culpability. An accomplice may very well have an affirmative defense, like in this case justified use of force, based on his or her own beliefs, irregardless of if the principal shares those same beliefs. Springer v. Commonwealth, which is a Kentucky Supreme Court case, allowed and found it immaterial for self-defense purposes, whether the principal or whether the defendant had fired the gun herself or had ordered someone else to do this. Again, we're going outside Illinois authority, so my question is when you say it's obvious that this is the state of the law, could the trial court and both trial counsel, for that matter, be forgiven for not taking the position that this is well-established law? It simply isn't in Illinois, is it? It is by the statute. There is no prohibition in the statute to raise justified use of force in an accountability case. And the same with the accountability statute. There's no prohibition that says justified use of force is a non-available defense in this case. And, again, I come back to if you're accountable, it's as if you had your finger on the trigger. There is no difference since 1850 in this state regarding being the accomplice or the principal. Apparently the judge didn't understand that. I mean, was counsel ineffective in failing to raise that after the judge had said that they were going to talk more about mentioning it? It wouldn't have been mentioned in the opening statements. They wouldn't have talked about that later. It never came up later, did it? It came out during the mid-trial sidebar after Judge Sachs had prevented trial counsel from cross-examining Paris Banks about this prior shooting. Now it came out in a different way. Well, I wouldn't concede that, Your Honor, because several of his comments definitely indicate Judge Sachs had thought that his pre-trial ruling was I prohibited justified use of force. It came out in a different way because now he's saying I'm going to put him in jail if he continued to do that, right? Well, it goes beyond that. I mean, he said, I told you before we started the trial, your client was accountable according to the state's theory, not the one who supposedly shot anybody. It is not self-defense. He wasn't accountable. There hadn't been any decision by the judge. According to the pre-trial ruling, it only limited opening statements. Now Judge Sachs believed he had at that point limited this justified use of force defense. And counsel didn't correct him? He tried. Counsel, I think, did his best, and he's being threatened with being incarcerated mid-trial. It serves his client no good to be in lockup while the trial's going on at that point. When we talk about counsel being ineffective, were the threats of the judge, maybe did they have some effect on counsel? Well, I think you can tell from Tedesco's behavior both pre-trial with the motion in limine, his behavior at the mid-trial sidebar where he's trying to clarify with Judge Sachs that, hey, if I call Antonio to testify here, can I ask him about this prior shooting? And Judge Sachs says, no, you can't do that. It's, quote, might have been, whether he, quote, might have shot sometime before, been shot sometime before is not relevant to this case at all. But at the end of the day, he never proffered an instruction, did he? He did not. And that is basis for our trial counsel's ineffectiveness claim that even though pre-trial, limitation had only been on opening statements for justified use of force, Tedesco, even in his motion for new trial, admits he had operated under the assumption that he had barred the entire trial from raising justified use of force. And we know that was the theory of defense in this case because he put in his motion for new trial, hey, there's enough sufficient evidence in this record from Leslie Kitchen's grand jury testimony, her trial testimony, and Paris Banks' trial testimony to warrant justified use of force instructions. And I thought I had been barred by you, Judge Sachs. I mean, Judge Sachs' misunderstanding went from pre-trial, mid-trial, post-trial. And at the motion for new hearing, Judge Sachs thought that Antonio had to testify in order to raise a justified use of force defense, which is, that's not correct according to Illinois Supreme Court law, that affirmative defense can be raised only in the state's evidence. And even if the state's evidence doesn't raise that, it can be raised through other evidence in the defense case. Now, turning back to trial counsel's ineffectiveness, it's questionable whether Tedesco would have been allowed to tender those instructions, but it didn't alleviate him the duty to perform effectively by tendering such instructions and put the onus on Judge Sachs to, I'm denying you altogether based on this evidence, or I've already barred you before trial from raising justified use of force. But wouldn't the proffer of instructions be analogous to making an offer of proof? Judge, this is what my evidence would be. Judge, this is my theory of the case here. I'm proffering these instructions. Well, can a judge affirmatively make a decision? No, he can't do it. And I think he raised that in the motion for a new trial. He tried to say, this was my theory of defense. There's enough evidence on this record, and I was operating under the assumption that you had barred me pre-trial from raising justified use of force defenses. Now, whether it's Judge Sachs actually having done that, which he seems to have done at the sidebar, or trial counsel's ineffectiveness, justified use of force wasn't raised at this trial. But couldn't, again, I go back to this ubiquitous ineffective assistance claim that we see in so many criminal appeals. Couldn't a reasonably competent attorney, threatened, as you say, mid-trial, with incarceration if he brings up the topic again, have decided the better part of valor is for me to get through this trial with this cantankerous trial judge and do the best I can on the theory that the State has asserted, on the accountability theory. And I'm going to argue that he didn't tell Thomas to do anything because he was in his grandparents' bedroom and didn't say anything to Thomas. And so when you look at the standard on ineffective assistance, which is the functional equivalent of no advocacy at all, how do we get there in this case? Well, we get there because Tedesco didn't realize what Judge Sachs' actual ruling on the pre-trial motion to eliminate was. It was only to bar. If he didn't realize it at first, he certainly knew the judge held that misconception mid-trial when he threatened to hold him in contempt. And so whether he subjectively understood the import of the ruling, he certainly knew the judge's attitude on it. So you do what you have to do in the middle of a trial. And you highlight that Judge Sachs had essentially prohibited Antonio from testifying about this prior shooting. So that essentially precluded Antonio from testifying in this case. He can't present the justification defense that now is not available. But Tedesco still had to tender the instructions to make this an issue not on Sachs but on himself, and he denied Antonio effective assistance by not at least tendering the justified use of force instructions, which he, by his own admission, admitted there was evidence of. I mean, he admits to this in the motion for new trial and then falls back on, well, I thought I had been prohibited by you. I was barred at the start of trial from presenting any evidence regarding self-defense. That was his quote at the hearing. Now, should this court not find Judge Sachs denied Antonio a fair trial, we ask that this court shall alternatively find that Tedesco provided ineffective assistance. Finally, Antonio was denied a fair trial by the prosecutors repeatedly misadvising the jury about justified use of force law and calling Antonio a criminal multiple times in opening statements. ASA Leuterson misadvised the jury that Antonio was still guilty of attempt murder and aggravated battery, even if he didn't know it was peace officers outside. And ASA Longo compounded this error by repeatedly misadvising the jury about justified use of force on this same topic. To which there was no objection. Correct, and we are operating under plain error, Your Honor. But ASA Longo's comments have no basis in law. You do not have to ask questions first before you use deadly force in this state, whether of self, others, or dwelling. And under either prong of plain error, this was absolutely a closely balanced case, evidenced by the jury's verdict of not guilty on attempt murder of peace officers. And this is also second prong plain error. There are no further questions, whether it was Judge Sachs' refusal to allow justified use of force defenses, trial counsel's ineffectiveness in not tendering the appropriate jury instructions, or the prosecutors repeatedly misadvising the jury as to justified use of force law. Antonio was denied a fair trial. Can we just reverse about the prosecutors repeated even after the judge sustained the use of the word criminal in the opening statement and continued to use it without objection. That alone justifies reversal. Under People v. Thomas, it does. If Your Honors have no further questions, we ask for Antonio's convictions to be reversed and the case remanded for a new trial. Thank you. Thank you, Your Honors. May it please the Court again, my name is Brian Blavisky, Assistant State's Attorney on behalf of the People. Could you spell your last name, please? L-E-V-I-T-S-K-Y. Thank you. I'd like to ask, following up on the last question, why doesn't People v. Thomas apply in this case? Your Honor, in People v. Thomas, what happened was the prosecutor said that a police officer doesn't have to answer the questions of a criminal, I believe. The standard for a claim of prosecution. Wasn't that in closing argument in Thomas? In Thomas, I don't recall if that comment was in closing argument or if it was in examination. But the standard for prosecutorial misconduct claims, even preserved ones, is for the defendant to establish that there was substantial prejudice. And in this case, the people's use of the word criminal in the opening statement was inartful. It was not accurate. What's inartful? Did he have a criminal record, the defendant? A record does not indicate that he does. Right. So how could he be a criminal? I mean, isn't that the worst thing you could tell a jury at the beginning of a case? Four times, I believe, the way we mentioned. I mean, the word is incorrect. There are other. But what if that isn't reversible? You know, what is?    It's not reversible. It's not reversible. Well, Your Honor, I think in order for it to be reversible or not, we have to get to substantial prejudice. And even if there is, if the defendant does meet that burden under, it would still be harmless error in this case. How is it harmless when the jury came back and found the defendant not guilty on several counts? Well, Your Honor, the evidence that was before this jury was that the defendant had ordered Thomas to shoot a gun, and that Thomas shot a gun, and that three police officers suffered some injury because of that. The evidence before the jury was. . . That was for the jury. That goes back to the other argument with regard to what was going on in that house, and the defendant's fear that they were being attacked as he had been attacked six months before, which wasn't allowed. Yes, but. . . Can you have it both ways? Well, in assessing just this issue in terms of whether or not the word criminal abounded to substantial prejudice and whether or not there wasn't overwhelming evidence in the people's case, I think we do look at the evidence that was before the jury at the time, and that the other evidence was not before the jury would not be taken into account just for that analysis. But if I could address some of the other issues that the defendant has raised, this is a case where, after hearing a loud noise in the backyard, the defendant ordered Demario Thomas to fire a gun through the door, whereas several Chicago police officers were attempting to execute a lawful search warrant, and the bullet that was fired fractured and caused injuries. Now, before trial, the people did file their motion in Le Monet to prohibit the defendant from mentioning this prior shooting in opening statements. And the theory of that was it's not relevant because he's charged on a theory of accountability, right? That's correct. Okay, you didn't argue hearsay, you didn't argue any other reason for its inadmissibility other than the State's theory of its case. That is correct. And before addressing the substantive issues that the defendant raises in his first, second, and third arguments, we are not going to maintain at this point that the defendant, because he was charged, tried as an accomplice, could not legally raise a justification defense. However, the evidence in this trial, some of the evidence... Do you confess an error on that point? We are no longer maintaining the argument that the defendant shouldn't have been able to argue it because of the fact that he was tried as an accomplice, that the evidence to support this instruction wasn't there. Well, explain that to me based on Banks and Kitchen's testimony that nobody heard it was the police at the back door. Right. So isn't that the slight evidence necessary to justify the defense? Well, the slight evidence the defendant has to either present or defend to in the people's case is that he and DeMario Thomas have this actual subjective belief in the need for self-defense. No, it doesn't have anything to do with testimony about someone's state of mind. The slight evidence is Kitchen's and Banks testifying, we never heard it was the police at the back door. And so what you've got then is evidence that someone is breaking into a house at midnight forcefully and that nobody knows it's the police. Isn't that enough to warrant a justification defense? Well, if we look at that evidence, what Kitchen said was that no one knew. But she didn't say, she didn't communicate anything to anyone else in the house. What Banks said in the grand jury testimony was that Kitchen started panicking like it's a game. But that was his interpretation of her actions. What we don't have is the evidence. My question is, isn't that the slight evidence? I understand your position that it's not enough to sustain the defense. But isn't that the slight evidence necessary to raise it in the state's case? Your Honor, this evidence simply, it wasn't the same evidence that defendant or Thomas had this subjective belief. All it established was that other people in that house didn't know who it was. Not that they, not that there was slight evidence that the justification, that the use of force would have been justified. Isn't that important though in order to, isn't that, to me, the linchpin, isn't it? To open the door, to make that defense. If it isn't, what, I mean, what would be necessary in your, the way you contemplate the law? What's the threshold of evidence that you need in order to get an instruction? Well, what we would have needed was some evidence that defendant or Thomas, who were the defendants in this case. So you need some testimony from them. Well, it didn't necessarily have to be testimony from them. It could have been something that came out in the Peoples case. But the Peoples case only established that two other people, Kitchen and Banks, may have thought, or they didn't know who it was. The point we're making, counsel, is if that testimony is in the record, isn't that sufficient to consider those defendants? Your Honor, I must write that this evidence isn't sufficient for those. You mean the testimony of Kitchen and Banks? Of Kitchen and Banks. Banks. That was insufficient. That was insufficient for defendant to claim. But what you're talking about, you rarely have direct evidence of a defendant's state of mind. That's correct. You rarely get that. And you've conceded that he and Thomas did not need to testify in order to establish that. So couldn't a reasonable trier of fact based on Kitchen's and Banks' testimony that nobody knew it was the police have found that, yeah, nobody knew, including the defendant? Well, it wasn't that nobody knew it was the police. It was that nobody knew who it was. Well, that's the same thing. I mean, that's even more important. If they knew it was the police, it would help be different. Obviously, they're saying, we didn't know who it was. That's the whole point. Right. But in order for it to be justified use of force, they would have to believe that this was someone who, in defense of their own situation, was coming to attempt to commit some forcible felony. And they said there was a lot of people out there or something to that effect, right? Right. And there was the knowledge of some people in the house about the shooting six months before where somebody in that house was shot 12 times. Right. And you said also that there was in the record the fact that there may have been difficult for the police to enter into a front door, which meant that they were trying to make this place safer maybe as a result of something that might have happened. I mean, the fact that they had, in the back door, you had to go through that fence. I mean, I don't know if you use the word fortress or something like that to kind of say they tried to keep the house safe. At midnight you have people coming in the back door. In dark clothes. In dark clothes. True. And you didn't hear anything. I mean, what would most people think? Just let them in? No, I mean, they would, in looking out the window, attempts to, as Kitchen testified she did, maybe to see if she could see that it was something with this. It was a group of people who were intent on committing some sort of forcible. But they got through the gate. Right. So it looked like they were going to come in on force. Yes. But isn't that enough? It's, well, if Kitchen thought that people were coming in and she started panicking and Benson looked at her and noticed that she was panicking like it's a gang, we would still need something to show that. Didn't Jones panic and run back into his grandparents' room? Wasn't that she panicked? I think that was consistent across the grand jury trial testimony we had written. The defendant ran towards his grandmother's room after the. So people panicked. Yes. I mean, what else do you want? I mean, we would just need something to show that the defendant and Thomas had the subjective belief. But like what? What else? Other than them testifying and saying, I subjectively believe that somebody not entitled to was trying to break into my house. What else would you get? Maybe something that Kitchen or Benson communicated that they saw. But, you know, again, you're talking about inferences, reasonable inferences from the evidence. If two people present in the same room with Jones and Thomas believe that some unknown gang in dark clothes was trying to break in the back door and then Jones runs out of the room to his grandparents' bedroom in a panic, as described by one of the witnesses, can't a jury infer from that that he, too, believed that some unknown people were trying to break into his house? Yeah, it would still have to be that we would still just say the evidence that he had that subjective belief Is there a particular case you're referring to? No, Your Honor. So isn't it just the principle of law that you infer intent from acts? That is correct. Intention can be inferred generally from all the circumstances surrounding someone's actions.  That's correct. But... It's not enough of an act to warrant the jury drawing that conclusion from that act? Your Honor, on this record, that Jones ran away would be insufficient to show that he believed that deadly force was necessary. Defendant attempted to introduce evidence of the prior shooting that was mentioned where... Counsel, just one second. So you're telling me that his act of running into his grandparents' bedroom was insufficient for the jury to draw an inference that maybe he feared for his life and was concerned about what was going on? Is that your position? Yes, Your Honor. For that trial, defendant, defense counsel, attempted to elicit the evidence of the prior shooting that was in March 2010. And the way that he attempted to do that was through Paris Banks. Paris Banks didn't know the defendant until August 15th of 2010. And the prosecutor objected, a general objection to that, correct? Made a general objection. I'm talking about the press examination? Yes. That was a general objection. And in no time did I see, and you pointed out if I missed it, did the judge or the prosecutor or, for that matter, the defense attorney mention the word hearsay. Your argument is all about hearsay in your brief. Yes. No other brief didn't have the word hearsay in that argument. It didn't mention it at all because it never came up in the record. So I don't, didn't you waive that, Darian? With having that made a specific objection, on what basis can you bring it up now in the appeal? Your Honor, two things. I do recall from the record that after the objection was made, after the objection was made, that the prosecutor did mention the issue that Paris Banks didn't know the defendant until long after the prior shooting. But didn't say it was hearsay. It wasn't the objection made. It wasn't said. It was a lot more clear. And if you don't make that specific objection, you're out of luck and we're not going to, there are very few appellate decisions that will say that. Correct. However, this court can affirm on any basis that is in the record, and for the citation, People v. Ligon, 2016, OLA 118023, stands for that proposition. And the evidence is that the shooting was long before Paris Banks knew the defendant. Anything that Paris Banks would have known from it would have come either from the defendant himself or from someone else who was there. And the only way that, the only reason that this evidence would have been admitted was to establish that the prior shooting had happened so that potentially the defendant would be able to make some claim that that's why he ordered DeMario Thomas to shoot. And so it was simply hearsay. So let's say you're right, that evidence shouldn't have come in and the trial court properly excluded it. Why isn't it relevant at sentencing? So at sentencing, the trial court did consider it. No, he said it's not relevant. He said it wasn't relevant in trial. It's not relevant now. It seems to me it's a mitigating factor. Well, the trial court had the argument before it and weighed it and found it not to be relevant. And I think if we look at the range the defendant was facing, which was 21 to 45 years, the fact that the defendant received 23, two years above the minimum, shows that the trial court did weigh these and when the fact is an aggravation and mitigation. Yeah, we know that. But this particular issue, the judge said it was irrelevant. So he wouldn't have weighed that if he thought it was irrelevant. Correct? Yes. And even if it was, even if the trial court did not consider it, the fact that the defendant received a sentence of 23 years when the maximum that he was facing was twice that, demonstrates that any error can prejudice him. Defendant did raise the issue of him testifying. And I would just like to briefly address that. This defendant was prohibited from testifying. The record of P.P. 186 to 187, this is a colloquy between trial counsel and the court. Trial counsel asked, I went to ask him, why were you scared? And the trial court's response was, we'll see if we get to that point. We didn't get to it. Then, again, trial counsel says if he were to testify to that judge why he ran, and the court said, we'll get to that point if he testifies, we'll talk about it then. And so it wasn't a matter of the trial court telling defendant that the only way you can present the sentiments or the only way you can argue justification is if you testify yourself. And the trial court didn't prohibit a defendant from testifying about the prior shooting. He hadn't ruled on it is what you're saying. I'm sorry? You're saying he hadn't ruled on it. He hadn't ruled on it. That's your position? Yes. And then our later defendant chose not to testify shortly after that colloquy. Was that colloquy after the judge had stated that he might send him to jail if he continued to press the issue? Or was that before? Your Honor, this colloquy was at PP 186. I believe that that was after Harris Banks had testified, which was where the discussion about the mention of jail had come up. I think it's important to note that the trial court had made a ruling on the people's motion in Lemonet and the defendant then attempted to solicit what amounted to hearsay evidence out of Harris Banks. And the trial court mentioned, sorry, I have to do it one more time, and you're going to jail, but there wasn't any further discussion about it after that point. And your Honor, our defendant argues that trial counsel was ineffective for failing to tender justified use of force instructions, and our response to that would be that because there was insufficient evidence to support the instructions for the reasons that we had just discussed, even after the people's case had closed, the defendant couldn't have been ineffective. The defendant argues that the people misstated the law of justification in their closing argument as well. And I think if we look at the status in context, what the people were doing was distinguishing between attempts first degree murder of a police officer and attempts first degree murder, when the people said, you don't believe that the defendant is part of a crime news, the police inside it doesn't matter, he's still charged with attempt murder of each of those officers as individuals. And so justification wasn't before the jury at that point. And in context, the people weren't attempting to misstate the law or to prejudice the defendant on the other. And then it was simply to expel the charges that were before the court. I'm sorry, before the jury. But it really wasn't an accurate statement of the law to argue to the jury that a defendant is not entitled to shoot first and ask questions later. When somebody's breaking into your house, you are entitled to shoot first, right? Looking at that comment that cops aren't allowed to shoot first and ask questions later and the fact that the police can't shoot first and ask questions later, why can't he? In context, that argument was getting to this idea that before you can use deadly force in justification, you have to have that actual subjective belief and need for self-defense. And although justification wasn't the argument that was in front of the jury, the formation of that subjective belief that you need to use self-defense has to happen before you fire the gun. And that would accurately state the law of justification. Do you have anything further? I'm sorry? Is there anything further? Your Honor, for those reasons and if there are no further questions, okay. For those reasons and as I said in our brief, we would ask this court to affirm defendant's sentence and conviction. Thank you. Thank you. Just briefly, Your Honor, to address some of the points raised by the State in their argument. With the State's concession on justified use of force, there was slight evidence and some evidence of justified use of force in this case. All we have to do is look to the Supreme Court in Jones and Everett, and I believe it was in Jones that in that case the reasonable belief the victim was 17 years or under or 17 years or older was raised solely on the State's circumstantial evidence. Now turning to the State's comments about the 2010 shooting, counsel tried to raise this. He tried to clarify whether he'd be able to ask Antonio whether he'd be able to talk about this, and Judge Sachs clearly indicated, and the quote is, that whether Antonio, quote, might have been shot sometime before is not relevant to this case at all. Antonio, what else is Antonio going to testify to other than this prior shooting at that point? And third, turning to the State's attorney's comments during closing argument, this just highlights why justified use of force instructions were so important. The prosecutor gets up there, misrepresents what justified use of force law is, and the jury is left weaponless to counter the prosecutor's misrepresentations and find out what the actual law is on this issue. It's entirely prejudicial. It satisfies both prongs of plain error. If Your Honors have no further questions, we'd ask this Court to reverse the convictions and remand for a new trial. The case is taken under advisement. We thank counsel, both of you, for excellent presentations and for your briefs, which set forth many issues for us to consider, and we'll take everything under advisement. Thank you very much.